PALERMO BROS. v. CAPPS.    (No. 5878.)

(Court of Civil Appeals of Texas. San Antonio. June 6, 1917. Rehearing Denied June 22, 1917.)

1. MASTER AND SERVANT  258(12) — INJURIES TO SERVANT—SAFE TOOLS—COMPLAINT —SUFFICIENCY.

A complaint alleging that plaintiff was a servant in charge of cotton gins under instructions how to clean them and not to stop them, and that a lever used in cleaning them was defective, so that he was hurt, is not demurrable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 827.]

2. PLEADING  11—INJURIES TO SERVANT— SAFE TOOLS—COMPLAINT—SUFFICIENCY.

An injured servant need not in his complaint set out evidence, but where he states the injuries and the cause thereof, the complaint is sufficient.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 31.]

3. MASTER AND SERVANT  278(3)—INJURIES TO SERVANT—EVIDENCE—SUFFICIENCY.

Evidence held to show master's negligence in furnishing a defective tool, in using which plaintiff servant was injured.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 958.]

4. MASTER AND SERVANT  281(1)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE— EVIDENCE.

Evidence held not to show contributory negligence on the part of a servant using a defective tool.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 987.]

Appeal from District Court, Brazos County; J. C. Scott, Judge.

Action by James A. Capps against Palermo Bros. Judgment for plaintiff, and defendants appeal. Affirmed.

Hudson & Hudson and Doremus, Butler & Henderson, all of Bryan, for appellants. Taliaferro & Armstrong, of Bryan, for appellee.

FLY, C. J. This is a suit for damages arising from personal injuries, alleged to have been inflicted on appellee through the negligence of appellants, a partnership. The cause was tried by jury, resulting in a verdict and judgment for appellee in the sum of $3,500.

It was alleged in the petition that appellee was in the employ of appellants as a ginner, having in his charge six gin stands, that he had never run a gin, and objected to having charge of the same, but he was assured by appellants that each of the gins was of the latest improved pattern, and, after being shown by appellants how to run the same, he would have no trouble in running the gins safely and satisfactorily; that, acting on such assurances, appellee agreed to run the gins from August 7, 1913, to January 1, 1914; that appellants undertook to show appellee how to run the gins, and particularly how to handle the breasts of the gins in case of fire or clogging or choking in the ribs. That instruction was that appellee should take off the top or lid and raise the breast by placing the lever attached to the side of it, then pressing it down until the notch of the lever caught in the iron flange or fastening provided for that purpose, then raising the breast still higher and propping it with an iron rod provided for that purpose, then using another stick in pushing the cotton from the ribs. It was alleged that appellee was ordered not to stop the gins in order to clean any one of them; there being no way to stop one gin without stopping all of them. Appellee was assured that the prescribed method of cleaning a gin was safe, and that the rod would not drop out and throw the breast down on appellee's arms while he was engaged in cleaning a gin. About August 23, 1913, appellee undertook to clean a gin in the prescribed manner, but while so engaged the breast fell with great force upon appellee's left arm and hand and forced them against the saws of the gin, inflicting serious and permanent injuries. It was alleged that the breast would not have reached his arm, although the rod slipped out, had it not been

for the defective condition of the lever which should have caught and held it before it reached the bottom. It was alleged that the only means of stopping the gins was to pull a cord on the wall near the gins, and appellee could not, with his arm caught, reach the cord, and he cried for help, and the manager ran to the cord and stopped the gins; that so much time was consumed by reason of the engineer not heeding the signal to stop that the manager had to run down stairs and shut off the steam, and appellee's hand and arm were so badly lacerated that he lost his arm.

[1] The petition stated a cause of action, and was not open to general demurrer, as claimed in the first assignment of error. There is only one proposition under the assignment, and that is the abstract declaration that when a petition "shows on its face that it is subject to general demurrer, it is the duty of the court to sustain same." The proposition is axiomatic, but has no premise in this instance.

[2] The second, third, fourth, fifth, sixth, seventh, and eighth assignments assail the action of the court in refusing to sustain special exceptions to the petition. The petition.was not subject to the attacks made upon it. The pleader was not bound to set out the evidence or write a dissertation on law in the petition. It is a clear statement of the injuries and the causes leading up to them. The assignments are overruled.

The assignments of error from the tenth to the twenty-second, inclusive, assail the instructions of the court for many errors of commission and omission, none of which is meritorious. Paragraph 3 of the charge is full and explicit, and is a correct application of the law to the allegations and facts.

The eleventh assignment is multifarious and should not be considered. However, it states no tenable objections to the charge.

In no part of the charge is undue stress laid upon any issue, but it meets every issue clearly and fully, and there were no abstractions in the charge that could possibly have injured appellants. There is no attempt to point out any testimony tending to show that appellee was an experienced hand.

The court not only charged fully on contributory negligence, but also gave three special instructions requested by appellants on the same subject. The jury found that appellee was not guilty of contributory negligence.

The court did not err in refusing to instruct a verdict for appellants. The evidence showed that appellee was hired by appellants to run the packer, and after he had been so employed for two days, over his protests, he was put in charge of the gins. He had never run a gin and knew nothing about them and was afraid of them, and he so informed the appellants. He was informed that there was no danger in operating the gins and that he had to operate them or quit. One of the appellants showed appellee how to operate the gins, and how to clean them when they became clogged. He was instructed not to stop the gins while cleaning them. He followed the instructions as to raising the breast by pulling a lever and then raising it higher and placing an iron pin under the breast as directed. The lever was badly worn, but appellee was not aware of its condition when he was hurt. Appellee discovered fire in the gin stands where the cotton had become wedged in the ribs, and tried to get it out in the way he had been told and with the instrumentalities furnished him. The breast dropped from the iron pin, and, instead of being stopped in its downward course by the lever, the latter, being worn and defective, did not stop the breast, and it fell clear down, knocking appellee's arm against the saws so that it was injured to such an extent that he lost it.

[3, 4] Appellee could not reach the cord to stop the engine, but called for help, and the manager came at once and gave the signal for the engine to stop, but the signal was not heeded, and he had to run down stairs to shut off the steam. All this time the saws were cutting and lacerating appellee's arm. Appellee did not cause the iron pin to drop from under the breast. Appellee knew generally that all machinery was dangerous, and he was afraid of it, but he did not realize the danger of carrying out the instructions of appellants in stopping a fire in the ribs of the gins. He followed his instructions to the letter. The lever would not hold. The vibration when the gins were running would shake it down, it was so defective. The evidence was clear as to the negligence of appellants, and no contributory negligence on the part of appellee was shown.

The cause was fairly presented to the jury, in the light of the law and facts, and it was not error to refuse the special charges requested by appellants.

The judgment is affirmed.